**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Equal Employment Opportunity
Commission,

                 Plaintiff,

v.

FCA US, L.L.C.,

                 Defendant.

_____/

Case No. 25-cv-10174

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR FOR A MORE DEFINITE STATEMENT AS TO PLAINTIFF'S COMPLAINT [11] AND GRANTING THE MOTION TO INTERVENE FILED BY CHERAE WHITE, JENNIFER SPRINGFIELD, AND LAKAELA HARVEY [14]**

Before the Court are (i) Defendant FCA US, LLC's motion to dismiss and/or for a more definite statement with respect to the complaint filed by Plaintiff Equal Employment Opportunity Commission ("EEOC") (ECF No. 11) and (ii) a motion to intervene in this action filed by putative Intervening Plaintiffs Cherae White, Jennifer Springfield, and LaKaela Harvey (ECF No. 14). For the reasons set forth below, the

Court (1) DENIES Defendant's motion to dismiss and/or for a more definite statement and (2) GRANTS the motion to intervene.

## I. Background

### A. Investigation by the EEOC

Defendant FCA US, LLC[1] is "one of the largest automobile manufacturers in the United States." (ECF No. 1, PageID.2, ¶ 4.) The EEOC brings this case against Defendant following an investigation of employment practices at Defendant's Detroit, Michigan-based assembly plant (the "Mack Plant"). (*Id.* at PageID.1.) The EEOC is a federal agency that is charged (among other things) with enforcing Title VII of the Civil Rights Act. (*Id.* at PageID.2, ¶ 3.) The EEOC alleges that it initiated an investigation of Defendant after two individuals (Jasmine Harvey and Jasmine Robinson) filed charges with the EEOC that alleged violations of Title VII in the course of their employment at the Mack Plant. (*Id.* at PageID.3, ¶¶ 7–8.)[2]

---

[1] The "Proposed Intervening Complaint" addressed herein suggests that Defendant does business as "Stellantis North America" (ECF No. 14, PageID.121) and also appears to refer to FCA US, LLC as "Stellantis" in some instances. (*See, e.g.*, *id.* at PageID.122, ¶ 7.)

[2] Copies of the charges filed by Harvey and Robinson are appended to Defendant's response to the motion to intervene. (*See* ECF Nos. 18-3, 18-4.)

Jasmine Harvey filed a charge of discrimination with the EEOC on May 21, 2021. (ECF No. 18-3.) Her charge stated, in relevant part: "Since December 2020, until most recently around February 1, 2021, I was sexually harassed by a male supervisor." (*Id.* at PageID.235.) The charge did not mention whether the same supervisor had harassed others. The charge further stated that Harvey was discharged by Defendant on April 8, 2021. (*Id.*) The charge identified April 8, 2021 as the date of the most recent instance of discrimination. (*Id.*)

Jasmine Robinson filed a charge of discrimination with the EEOC on or about August 25, 2021. (ECF No. 18-4.) The charge asserted, in relevant part, that "[i]n or around April 2021, my supervisor sexually harass[ed] me . . . ." (*Id.* at PageID.238.) The charge further stated: "In or around May 2021, after I did not get a response to my complaints about sexual harassment and continued sexual harassment including threats for complaining[,] I was forced to resign my position because of sexual harassment." (*Id.*) Ms. Robinson further stated: "During my time of employment, myself and other women were subjected to sexual harassment by members of management as well as other male employees." (*Id.* at PageID.239.) The charge identified April 2, 2021 as

3

the earliest date on which discrimination took place and May 31, 2021 as the latest date on which discrimination took place. (*Id.* at PageID.238.)

On May 17, 2024, the EEOC advised Defendant in "Letters of Determination" that it had found reasonable cause to believe that Defendant had violated Title VII. (ECF No. 1, PageID.3, ¶ 9.)[3] The Letters of Determination invited Defendant to engage in "informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief." (*Id.*)

The Letter of Determination with respect to Jasmine Harvey stated, in relevant part, that the "evidence obtained during our investigation supports a finding that there is reasonable cause to believe [Harvey] was subjected to sexual harassment by her male supervisor." (ECF No. 11-2, PageID.105.) It further stated that the "evidence further demonstrates that, in addition to [Harvey], there were other harmed parties who were also subjected to sexual harassment by the same male supervisor." (*Id.*)

---

[3] The Letters of Determination are appended to Defendant's motion to dismiss the EEOC's Complaint. (*See* ECF Nos. 11-2, 11-3.)

The Letter of Determination with respect to Jasmine Robinson found "reasonable cause to believe that [Robinson] was subjected to sexual harassment due to her sex and constructively discharged in violation of Title VII." (ECF No. 11-3, PageID.107.) It additionally found that "like and related evidence growing out of this investigation indicates that there is reasonable cause to believe that other, similarly situated women were harmed due to [Defendant's] failure to prevent and remedy sex harassment." (*Id.*) The letter did not attribute the sexual harassment to any particular individual.

On June 7, 2024, the EEOC issued a "Notice of Failure of Conciliation" to Defendant with respect to Robinson's charge. (ECF No.1, PageID.4, ¶ 11.) On June 24, 2024, the EEOC issued a "Notice of Failure of Conciliation" to Defendant with respect to Harvey's charge. (*Id.* at PageID.4, ¶ 12.)

### B.   Complaint Filed by the EEOC

The EEOC filed its Complaint with this Court on January 17, 2025. (ECF No. 1.) The Complaint alleges that, "[s]ince at least December of 2020, Defendant has engaged in unlawful employment practices at its Detroit, Michigan Assembly Plant location (the 'Mack Plant') in violation

of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1)." (*Id.* at PageID.4, ¶ 14.) It further alleges that "Defendant received several complaints that male employees, including supervisors, were sexually harassing female employees." (*Id.* at PageID.5, ¶ 15.) "Some female employees were afraid to complain about the sexual harassment they suffered while working at the Mack Plant because Defendant routinely failed to discipline the male harassers, and often failed to address or respond to complaints." (*Id.*)

The Complaint includes details regarding Defendant's treatment of Ms. Harvey and Ms. Robinson. (*See generally id.* at PageID.5–9.) It also contains details regarding the treatment of other, as-yet-unnamed female employees. (*See, e.g., id.* at PageID.5–7, ¶¶ 15, 23, 29, 30, 33.)

### i. Jasmine Harvey

The Complaint alleges that Jasmine Harvey began working as a production employee at Defendant's Mack Plant in or around December of 2020 after working at a different Michigan plant operated by Defendant for nearly three years. (*Id.* at PageID.5, ¶ 16.)

"Soon after Harvey began working at the Mack Plant, Geffrey Harrison, a male production supervisor, began to make unwelcome

sexual advances towards her." (*Id.* at PageID.5, ¶ 17.) "Harrison repeatedly came near Harvey's work area to ask her out on dates." (*Id.* at PageID.6, ¶ 18.) "Harrison regularly and inappropriately touched Harvey while she was working, leered at her in a sexual manner, and made offensive sexual comments to her." (*Id.*) "For example, Harrison began to intentionally walk by Harvey to brush up against the back of her thighs, and then pretended that his actions were accidental." (*Id.* at PageID.6, ¶ 19.) Harrison made "sexually-charged comments" to Harvey such as "I want your panties on my desk by noon." (*Id.*) He also made "comments on her body such as 'Your a[**] is fat in those jeans,' 'You look real thick in those pants,' and 'Your body looks right in that outfit.'" (*Id.*)[4] Harrison "inappropriately express[ed] how he desire[d] [Harvey], [making comments] such as 'You don't know what you do to me.'" (*Id.*) Harrison also "told lies about Harvey and started rumors about her, which included, but were not limited to, rumors that he possessed her underwear and that she slept with various men working at the Mack Plant." (*Id.* at PageID.6, ¶ 20.)

---

[4] The Court has added asterisks to alter certain terms used in the Complaint for the purposes of this Memorandum Opinion and Order.

Harvey "complained about Harrison's sexual harassment and asked to be reassigned so that she would not have to work under his supervision." (*Id.* at PageID.6, ¶ 21.) "Defendant terminated Harvey soon after she complained about Harrison." (*Id.* at PageID.6, ¶ 22.)

"Other female employees complained to Defendant that Harrison touched them inappropriately, made vulgar, sexual comments to them, and would use his authority to make working at the Mack Plant more difficult." (*Id.* at PageID.6, ¶ 23.) "For example, one female employee complained that Harrison touched her thigh and neck without her consent." (*Id.* at PageID.6–7, ¶ 23.) "Another female employee complained that Harrison rubbed his hand on her thigh while making sexual, inappropriate statements." (*Id.* at PageID.7, ¶ 23.)

"Defendant either ignored the sexual harassment complaints made by female employees about Harrison or failed to adequately address their complaints." (*Id.* at PageID.7, ¶ 25.) Among other things, Defendant "failed to discipline Harrison." (*Id.* at PageID.7, ¶ 24.)

ii.     <u>Jasmine Robinson</u>

The Complaint alleges that Jasmine Robinson began working as a production employee at the Mack Plant on or about March 21, 2021. (*Id.*

at PageID.7, ¶ 26.) Matthew Johnson, who was one of Defendant's "Team Leads," informed Robinson that he was her supervisor. (*Id.*) Johnson "made" Robinson "move to a different area" of the Mack Plant "so that she had to work closer to him." (*Id.*)

"Johnson began to sexually harass Robinson within two days of her employment" at the Mack Plant. (*Id.* at PageID.7, ¶ 27.) Johnson "began to purposely have inappropriate sexual conversations in Robinson's presence." (*Id.* at PageID.7, ¶ 28.) "He constantly spoke about women 'shaking their a[**]' and 'sucking d*ck.'" (*Id.*) "Johnson asked Robinson and other female employees to come over to his house for 'gifts' (meaning sex).'" (*Id.* at PageID.7, ¶ 29.)

"Robinson told Johnson that his remarks and conduct made her uncomfortable, but he continued on with his misconduct." (*Id.* at PageID.7, ¶ 30.) "On a daily basis, Johnson would come over to the area where Robinson worked and spoke loudly about sexual intercourse directly to her and to other women who were present." (*Id.*) Johnson also "began telling Robinson that he wanted to touch her." (*Id.* at PageID.8, ¶ 31.)

9

"In April of 2021, Johnson *did* touch Robinson." (*Id.* at PageID.8, ¶ 32 (emphasis in original).) "He groped her rear end and she told him not to do that again." (*Id.*) "Johnson apologized to Robinson for physically touching her" but he "continued to intentionally visit her work area and speak loudly about men and women engaging in sexual intercourse in her presence." (*Id.*)

In April of 2021, "Robinson walked down to Defendant's labor relations office and complained about Johnson's behavior." (*Id.* at PageID.8, ¶ 33.) "Robinson also complained to Defendant that she and other female employees were being sexually harassed by male supervisors." (*Id.*) "On more than one occasion, Robinson pleaded with [Defendant] to transfer her so that she would not have to work under Johnson's supervision." (*Id.* at PageID.8, ¶ 34.)

"Defendant informed Robinson that it would investigate her complaint." (*Id.*) However, "Defendant refused to transfer Robinson, failed to address Robinson's sexual harassment complaint, and failed to discipline Johnson for sexual harassment." (*Id.* at PageID.8, ¶ 35.)

"After Robinson complained to Defendant, Johnson engaged in threatening and intimidating conduct toward her." (*Id.* at PageID.9,

10

¶ 40.) "For example, he told her to 'be careful about complaining,' scowled at her when he saw her, and denied her request to go to the restroom loudly and in front of other employees, which embarrassed her." (*Id.*)

"In May of 2021, Robinson told Defendant about Johnson's intimidation and repeatedly followed up with Defendant about the status of her sexual harassment complaint." (*Id.* at PageID.9, ¶ 41.) "Robinson continued to plead with Defendant to transfer her so that she would not have to work under . . . Johnson's supervision." (*Id.*) But "Defendant failed to address Robinson's sexual harassment complaint and failed to transfer Robinson." (*Id.* at PageID.9, ¶ 42.) "Consequently, Robinson resigned on June 7, 2021." (*Id.* at PageID.9, ¶ 43.)

### iii.   Claims for Relief

The Complaint sets forth a claim that, since at least 2020, Defendant created a hostile work environment in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) with respect to Harvey, Robinson, and "all aggrieved current or former female production employees who work or worked at Defendant's Mack Plant." (*Id.* at PageID.4, ¶ 14; *id.* at PageID.8, ¶ 37.) The Complaint also alleges that

11

Defendant constructively discharged Robinson in violation of Title VII. (*See id.* at PageID.9–10, ¶¶ 39–46.)

The Complaint seeks the following relief:

- A permanent injunction that "enjoin[s] Defendant . . . , its officers, successors, assigns, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment." (*Id.* at PageID.10.)

- An order that would require Defendant to "institute and carry out policies which provide equal employment opportunities for female employees and which eradicate the effects of its past and present unlawful employment practices." (*Id.*)

- Orders requiring Defendant to "make whole Harvey, Robinson and other similarly aggrieved women" for "past and future" "pecuniary" and "non-pecuniary" losses "resulting from the unlawful practices described in" the Complaint. (*Id.* at PageID.10–11.)

- An order requiring Defendant to pay punitive damages to "Harvey, Robinson and other similarly aggrieved women." (*Id.* at PageID.11.)

- An order requiring Defendant to pay Jasmine Robinson "appropriate back pay with prejudgment interest," "front pay (or in the alternative, reinstatement)," and "other affirmative relief necessary to eradicate the effects of its unlawful employment practices." (*Id.*)

The EEOC also seeks to recover its own costs in bringing this action. (*Id.*)

12

## C.    Proposed Intervening Complaint

On March 28, 2025, three putative Intervening Plaintiffs (Cherae White, Jennifer Springfield, and Lakaela Harvey) filed a motion to intervene as individual parties in this case. (ECF No. 14.) A "Proposed Intervening Complaint" is included in the body of their motion. (*See id.* at PageID.121–149.)[5]

Like Harvey and Robinson, the Intervening Plaintiffs were previously employed at Defendant's Mack Plant in Detroit, Michigan. (*Id.* at PageID.121, ¶ 1.) The Intervening Plaintiffs claim that, while working at the Mack Plant, they were subjected to "inappropriate and dehumanizing remarks" by Robert Brown and JoeDon Williams. (*Id.* at PageID.122, ¶ 3.) Brown was allegedly a supervisor at the Mack Plant during the relevant period while Williams was a "Team Leader." (*Id.* at PageID.124, ¶¶ 2–3.) Neither Brown nor Williams is referenced by name in the EEOC's Complaint.

Intervening Plaintiff Cherae White was hired to work as a supervisor by the Mack Plant in "late 2022." (*Id.* at PageID.125, ¶ 14.)

---

[5] The numbering of paragraphs in the Proposed Intervening Complaint starts anew at Paragraph 1 in the "Parties" section. (*See* ECF No. 14, PageID.124.)

Her supervisor at the Mack Plant (Brown) allegedly "gawked" and "leered" at her on a "daily basis." (*Id.* at PageID.125, ¶ 15.) She further alleges that, in "February 2023, Brown's harassment escalated when he approached her from behind, groped her buttocks, and whispered in her ear 'do you like your [a**] licked?'"[6] (*Id.* at PageID.126, ¶ 17.) Brown "followed [White] around the Plant, even waiting outside the bathroom for her, and continued to broadcast his sexual escapades and the sexual fantasies he crafted about the women working in the plant, many of whom were his subordinates." (*Id.* at PageID.126, ¶ 20.)

White made "numerous complaints [about Brown] to her union steward, Stellantis management, HR/Labor relations, and the ethics hotline." (*Id.* at PageID.126, ¶ 21.) These complaints were "met with deafening silence." (*Id.*) White alleges "upon information and belief" that Brown was "never . . . questioned, spoken to, investigated, disciplined, or fired . . . for the relentless sexual harassment he levied against . . . White, the named Intervening Plaintiffs, and the women working in the Plant." (*Id.* at PageID.128, ¶ 33.)

---

[6] The Court has added asterisks to alter certain terms used in the Proposed Intervening Complaint for the purposes of this Memorandum Opinion and Order.

14

White also alleges that Williams "engaged in sexual harassment and retaliation against various women in the Plant, including" White. (*Id.* at PageID.129, ¶ 43.) She specifically accuses Williams of "[l]eering" "[g]awking" at "White and other women in the Plant," "[e]ngaging in sexually explicit conversations loudly and while on the floor and within earshot of . . . White," "[b]roadcasting sexually explicit conversations, including conversations about women in the plant," and "[r]efusing to [permit White] to use the restroom while she was working on the line . . . after he learned she complained of sexual harassment." (*Id.* at PageID.129–130, ¶ 44.)

White alleges that her employment was terminated by Stellantis on December 7, 2023. (*Id.* at PageID.132, ¶ 50.)

Intervening Plaintiff Jennifer Springfield alleges that she began working for Stellantis on January 13, 2022, and that she was transferred to the Mack Plant in "early 2023." (*Id.* at PageID.133, ¶ 53.) "Almost immediately, she was subjected to a barrage of sexually explicit conversations, advances, and threats initiated by Defendant Brown." (*Id.* at PageID.133, ¶ 54.) "His harassment included physical advances, leering, and making vile, sexually charged comments about her body and

15

the sexual acts he wanted her to perform on him." (*Id.* at PageID.133, ¶ 55.) "[O]n more than one occasion," Brown "ran his hands from . . . Springfield's shoulders, down her back, and over her butt." (*Id.* at PageID.133, ¶ 56.) On "[o]ne occasion, after Springfield rejected Brown, [h]e told her would 'f[***] her in the a[**],' essentially threatening to rape her." (*Id.* at PageID.134, ¶ 60.)

Springfield further alleges that Brown "made threats against her life, forcing [her] to report the matter to the Detroit Police Department." (*Id.* at PageID.134, ¶ 62.) She claims that she advised Defendant and her union that she had reported the situation to the police, but "Defendants did not investigate or take any actions to prevent further harassment by Defendant Brown." (*Id.* at PageID.134, ¶¶ 63–64.) She also alleges that she made "repeated complaints to Stellantis management, HR, Labor Relations, the anonymous hotline, and the Detroit Police," but "Stellantis refused to take any action to address the harassment." (*Id.* at PageID.134, ¶ 61.)

Springfield resigned from her position with Defendant in the spring of 2023 after concluding that "Stellantis would never provide the

necessary recourse needed to make her work environment safe enough for her to return to the Plant." (*See id.* at PageID.136, ¶¶ 73–79.)

Intervening Plaintiff LaKaela Harvey joined Stellantis in August 2021 and "quickly became a target of Brown's harassment." (*Id.* at PageID.137, ¶ 83.) Brown allegedly would "gawk[]" and "leer[]" at Harvey and would "touch" Harvey's "shoulder, upper back, and waist when speaking with her and/or passing by her." (*Id.* at PageID.137, ¶¶ 85, 88.) He also tried to engage Harvey in "sexually explicit conversations." (*Id.* at PageID.137, ¶ 86.)

Harvey alleges that she was "terrified" to "report" Brown "since the women who did were further targeted and often had their employment inexplicably terminated." (*Id.* at PageID.139, ¶ 96.) She did, however, tell her fellow Intervening Plaintiff Cherae White about the "open vulgar and sexually explicit conversations" in which Brown had attempted to engage her. (*Id.* at PageID.139, ¶ 97.)

Harvey's employment with Defendant was terminated in December 2023. (*Id.* at PageID.141, ¶ 116.) She was having a pregnancy-related medical emergency and allegedly called in to report her absence the

"wrong way." (*Id.* at PageID.142, ¶ 117.) Harvey believes that her termination was pretextual. (*See id.* at PageID.142, ¶ 120.)

The Proposed Intervening Complaint sets forth four counts:

- Count I: Sexual Harassment/Hostile Work Environment under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), which is asserted by all Intervening Plaintiffs against all defendants named in the Proposed Intervening Complaint.

- Count II: Gender Discrimination under ELCRA, which is asserted by Intervening Plaintiff White against all defendants named in the Proposed Intervening Complaint.

- Count III: Sexual Harassment/Hostile Work Environment under Title VII, which is asserted by all Intervening Plaintiffs against Defendant FCA US, LLC.

- Count IV: Gender Discrimination under Title VII, which is asserted by Intervening Plaintiff White against Defendant FCA US, LLC.

(*Id.* at PageID.144–149, ¶¶ 133–168.)

### D.    Procedural History

On March 21, 2025, Defendant FCA US, LLC filed a motion to dismiss the EEOC's Complaint under Rule 12(b)(6) and/or for a more definite statement under Rule 12(e). (ECF No. 11.) The motion is fully briefed. (ECF Nos. 17, 20.)

18

On March 28, 2025, the putative Intervening Plaintiffs moved for leave to intervene in this action and to file their Proposed Intervening Complaint. (ECF No. 14.)[7] Defendant FCA US, LLC filed a response in opposition to the motion to intervene on April 11, 2025. (ECF No. 18.) The EEOC did not file a response.[8] The Intervening Plaintiffs filed a reply in support of their motion on April 18, 2025. (ECF No. 19.)

## II.    Motion to Dismiss and/or for a More Definite Statement

Defendant FCA US, LLC moves to dismiss the Complaint filed by the EEOC for failure to state a claim under Rule 12(b)(6) or, in the alternative, seeks to require the EEOC to provide a more definite statement of its claims under Rule 12(e) of the Federal Rules of Civil Procedure. The motion is denied because the EEOC has plausibly alleged that (i) Defendant created a hostile work environment for female production employees at its Detroit Mack Plant and (ii) Defendant constructively discharged Jasmine Robinson in violation of Title VII.

---

[7] The putative Intervening Plaintiffs initially moved for leave to intervene on March 17, 2025. (*See* ECF No. 9.) Their motion was stricken from the record because, among other things, it included no indication of whether counsel for the intervenors had sought the concurrence of counsel for Defendant. (*See* ECF No. 13.)

[8] The Intervening Plaintiffs represent that "Ms. Brooks, counsel for the EEOC, has been advised of this motion and has no objection." (*See* ECF No. 14, PageID.117.)

19

## A.    Legal Standards

### i.    Motion to Dismiss Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a facially plausible claim requires courts to construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 425 (6th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Although for the purposes of [a] motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286

(1986), *cited in Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997)). However, "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id.* (citing *Weiner*, 108 F.3d at 89).[9]

### ii.  Motion for More Definite Statement (Rule 12(e))

"A party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Federal courts generally disfavor

---

[9] In this case, the Court may consider Defendant's copies of the charges submitted by Jasmine Robinson and Jasmine Harvey (ECF Nos. 18-3 & 18-4) and the EEOC's Letters of Determination (ECF Nos. 11-2 & 11-3), to the extent relevant, as these documents are referenced in the EEOC's Complaint. (*See* ECF No. 1, PageID.3, ¶¶ 7–9 (referencing charges and Letters of Determination).)

motions for more definite statements." *E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 966 (E.D. Tenn. 2009) (citing *Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007)). "A motion under Rule 12(e) should not be granted unless the complaint is 'so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *Id.* (quoting *Shirk v. Fifth Third Bancorp*, No. 05-cv-049, 2008 WL 4449024, at *8 (S.D. Ohio 2008)).

### B.   Analysis

#### i.   The EEOC as Plaintiff

Because the EEOC (as opposed to a private party) filed a complaint alleging violations of Title VII, the laws governing the EEOC's role in enforcing Title VII provide helpful context for assessing the sufficiency of its allegations.

"Title VII protects all employees . . . against discrimination based on race, color, religion, sex, or national origin." *Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 323 (1980); *see also* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

22

privileges of employment, because of such individual's race, color, religion, sex, or national origin."). The EEOC may "bring suit in its own name 'to prevent any person from engaging in any unlawful employment practice' prohibited by Title VII." *E.E.O.C. v. Tesla, Inc.*, 727 F. Supp. 3d 875, 889 (N.D. Cal. 2024) (quoting 42 U.S.C. § 2000e-5(a)). "In such actions, the [EEOC] can act as 'a proxy for the victims of discrimination' or 'to vindicate the public interest in preventing employment discrimination,' or both." *Id.* (quoting *Gen. Tel. Co.*, 446 U.S. at 326).

"If the court [presiding over a civil action filed by the EEOC] finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice." 42 U.S.C. § 2000e-5(g)(1). The court may also "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate." *Id.*

23

ii.      Hostile Work Environment Claim

The Court finds that the Complaint plausibly alleges that Defendant FCA US, LLC created a hostile work environment for its female production employees by employing supervisors who sexually harassed female employees and failing to respond adequately to complaints about sexual harassment.

A plaintiff who asserts a sexual-harassment-based Title VII hostile-work-environment claim must allege "'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that [she] was subjected to a hostile work environment." *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377–78 (6th Cir. 2026) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)). A hostile work environment exists when a "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The hostile-work-environment claim in this case includes allegations concerning the treatment of the two individuals whose charges led to this civil action (Jasmine Robinson and Jasmine Harvey) as well as allegations concerning a larger class of women that the EEOC alleges was subjected to a hostile work environment based on sexual harassment. The Court will first address the sufficiency of allegations pertaining to the two charging individuals before turning to the adequacy of the EEOC's allegations regarding a larger class.

### a.      *Robinson and Harvey*

The EEOC's complaint plausibly alleges that Jasmine Robinson and Jasmine Harvey were both subjected to a hostile work environment based on their sex. This result is compelled by a recent Sixth Circuit decision that affirmed the denial of a motion to dismiss in *Bruce v. Adams & Reese, LLP*, 168 F.4th 367 (6th Cir. 2026). The plaintiff in *Bruce* was found to have adequately alleged a sexual-harassment-based hostile-work-environment claim against a law firm where she previously worked as a paralegal. *See id.* at 378–81. The plaintiff alleged, among other things, that a supervising attorney suggested that "she keep clients happy by visiting them 'in a short skirt,' that she [was] a '[h]oe,' and that

25

it would be 'hot' if she had sex on a desk in the office." *Id.* at 378. The Sixth Circuit concluded that it was "certainly *plausible* that a young female paralegal would be humiliated and intimidated, and that her performance would be affected, by [such] persistent suggestions." *Id.* The court further found that the complaint plausibly alleged that the harassment was pervasive in that the allegations suggested that the offending attorney "consistently and continually directed sexualized comments" at the plaintiff. *Id.*

The complaint here contains similar allegations to those found sufficient in *Bruce*. The EEOC alleges, for instance, that a supervisor (Harrison) "regularly and inappropriately touched [Jasmine] Harvey while she was working, leered at her in a sexual manner, and made offensive sexual comments to her." (ECF No. 1, PageID.6, ¶ 18.) It includes specific examples—e.g., the supervisor would purposely "brush up against the back of [Harvey's] thighs" and made comments such as "I want your panties on my desk by noon" and "Your body looks right in that outfit." (*Id.* at PageID.6, ¶ 19.) It further alleges that another supervisor (Johnson) "purposely ha[d] inappropriate sexual conversations in [Jasmine] Robinson's presence," "constantly spoke about women 'shaking

their a[**]' and 'sucking d*ck,' and asked Robinson and other female employees to "come over to his house for 'gifts' (meaning sex)." (*Id.* at PageID.7, ¶¶ 28–29.) The EEOC further alleges that, "On a daily basis, Johnson would come over to the area where Robinson worked and spoke loudly about sexual intercourse directly to her and to other women who were present." (*Id.* at PageID.7, ¶ 30.) It also claims that Johnson "groped" Robinson's "rear end" in April 2021 and, after she told him not to do that, "he continued to intentionally visit her work area and speak loudly about men and women engaging in sexual intercourse in her presence." (*Id.* at PageID.8, ¶ 32.)

These allegations support a plausible inference that Robinson and Harvey were both subjected to a hostile work environment based on their sex while employed at Defendant's Mack Plant, in violation of Title VII.

### b. *Class Claims*

The Court also finds that the Complaint includes plausible and sufficiently definite claims for class-wide relief on behalf of female production workers at the Mack Plant who were subjected to a hostile work environment due to sexual harassment.

27

The EEOC may "seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to Federal Rule of Civil Procedure 23." *Gen. Tel. Co.*, 446 U.S. at 333–34. Claims for class-wide relief must, however, meet the usual standards for plausibility and definiteness under Rules 12(b)(6) and 12(e). *Cf. Serrano v. Cintas Corp.*, 699 F.3d 884, 898 (6th Cir. 2012) (observing that the EEOC was "required . . . to set forth sufficient facts in its complaint upon which its claim for relief under Title VII was plausible" but need not plead its specific intent to rely on the *Teamsters* evidentiary framework).

While neither party identifies any binding authority from the Sixth Circuit addressing what the EEOC needs to allege for its claim for class-wide relief to be deemed reasonably definite and sufficient to survive a motion to dismiss,[10] courts in other jurisdictions have found allegations sufficient where they are reasonably specific as to the time frame covered and the general identity of affected employees. A federal court in the Northern District of California, for instance, found allegations by the

---

[10] Because the EEOC's pleading is not subject to the requirements of Rule 23, *see Gen. Tel. Co.*, 446 U.S. at 333–34, Defendant FCA is not aided by citing Sixth Circuit decisions that address whether a class definition meets the requirements of Rule 23. (*See, e.g.*, ECF No. 11, PageID.90 (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)).)

EEOC "sufficient to support the inference [that] alleged racial harassment was sufficiently severe to pollute Tesla's Fremont Factory and create an abusive workplace for Black employees" where the EEOC alleged the pervasive use of racial slurs and epithets in high-traffic areas of a single Tesla manufacturing plant and further alleged that Tesla failed to take appropriate action in response to racial harassment. *See E.E.O.C. v. Tesla, Inc.*, 727 F. Supp. 3d 875, 893 (N.D. Cal. 2024). Similarly, after finding the EEOC's initial class-based allegations insufficiently definite under Rule 12(e), *see E.E.O.C. v. Pioneer Hotel, Inc.*, No. 2:11-cv-1588-LRH-RJJ, 2012 WL 1601658, at *3 (D. Nev. May 4, 2012), a federal court in Nevada denied a motion to dismiss an amended pleading in which the EEOC alleged that, "since at least 2006," a hospitality employer had "subjected a class of Latino and/or dark-skinned employees at its Laughlin, Nevada facility to unwelcome harassment based on their national origin and/or skin color that was severe and pervasive, creating a hostile work environment." *E.E.O.C. v. Pioneer Hotel, Inc.*, No. 2:11-cv-1588-LRH-RJJ, 2013 WL 3716447, at *3 (D. Nev. July 15, 2013). The court noted that the amended complaint identified four departments (housekeeping, engineering, security, and

29

food service) in which members of the class were subjected to a hostile work environment and "put[] forward specific behaviors and language used to create the alleged hostile environment." *Id.*

The allegations supporting the EEOC's claim for class-wide relief are distinguishable from those found insufficient in *E.E.O.C. v. Il Fornaio (Am.) LLC*, No. 2:22-cv-05992-SPG-JPR, 2024 WL 4003318 (C.D. Cal. Apr. 3, 2024) (cited in ECF No. 11, PageID.93–95 and ECF No. 20, PageID.289–290). The *Il Fornaio* court found claims for class-wide relief insufficient because the EEOC did not identify (1) which of the defendant's 19 locations were covered, (2) which types of roles the affected employees held, (3) the "approximate timeframes" when affected employees worked for the defendant, and (4) the "approximate dates of complaints about the offending conduct and/or of resignation." *Id.* at *4. The court also noted the absence of even anonymized allegations regarding specific, non-charging members of the class. *See id.* The court explained that, although no one factor was "dispositive," these omissions, taken together, "render the allegations regarding the [non-charging] Aggrieved Employees too vague to satisfy the Rule 8 pleading standards." *Id.* The court granted the motion to dismiss as to allegations concerning

30

the non-charging parties but permitted the EEOC to amend its claims to cure the deficiencies identified in the court's opinion. *See id.*[11]

The EEOC's class-based allegations here differ from the allegations in *Il Fornaio* in at least the following respects: the allegations target a single plant instead of multiple potential locations (*see* ECF No. 1, PageID.1); the complaint seeks relief on behalf of "aggrieved, current or former, female production employees" (*see id.*) and thus includes details regarding the scope of the class; and the complaint alleges that unlawful employment practices occurred at the Mack plant "[s]ince at least December of 2020" (*id.* at PageID.4) based on an investigation that concluded in or around May 2024 (*id.* at PageID.3). The complaint also includes details regarding non-charging individuals. It alleges that Defendant "received several complaints that male employees, including supervisors, were sexually harassing female employees." (*Id.* at PageID.5, ¶ 15.) In particular, the EEOC alleges that multiple (non-

---

[11] The EEOC availed itself of the opportunity to amend its claims. *See E.E.O.C. v. Il Fornaio (Am.) LLC*, No. 2:22-cv-05992-SPG-JPR, 2024 WL 5316236, at *3 (C.D. Cal. Nov. 14, 2024). The defendant thereafter moved to dismiss based on lack of subject-matter jurisdiction, arguing that the claims for class-wide relief in the EEOC's amended complaint exceeded the scope of the EEOC's investigation. *See id.* at *5. The motion was denied. *See id.* at *1.

31

charging) women complained to Defendant that a particular supervisor (Harrison) "touched them inappropriately, made vulgar, sexual comments to them, and would use his authority to make working at the Mack Plant more difficult," and provides specific details regarding the complaints raised by two (as of now anonymous) female employees. (*Id.* at PageID.6–7, ¶ 23.) The EEOC also alleges that, in April 2021, one of the charging employees (Robinson) complained to Defendant that "she and other female employees were being sexually harassed by male supervisors." (*Id.* at PageID.8, ¶ 33.)

In sum, the Complaint plausibly asserts a hostile-work-environment claim on behalf of Jasmine Robinson, Jasmine Harvey, and a class of additional women who were subjected to a sexual-harassment-based hostile work environment while working at Defendant's Mack Plant after December 2020 and during the period covered by the EEOC's investigation.

### iii.   Constructive-Discharge Claim

The Court also concludes that the EEOC has alleged a plausible claim that Jasmine Robinson was constructively discharged by Defendant in violation of Title VII.

To survive Defendant's motion to dismiss the constructive-discharge claim, the EEOC's complaint "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" (*Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)) that Defendant constructively discharged Jasmine Robinson in violation of Title VII. A constructive discharge occurs for purposes of a Title VII claim when "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727–28 (6th Cir. 2014) (citations omitted).

The Complaint's allegations permit the Court, at this stage of the case, to draw the reasonable inference that Defendant deliberately created intolerable working conditions to force Jasmine Robinson to resign. The complaint alleges that Robinson complained to Defendant that she was being sexually harassed by her supervisor and then later complained that the same supervisor was attempting to intimidate her. (*See* ECF No. 1, PageID.9, ¶¶ 40–41.) It further alleges that Robinson asked Defendant repeatedly to transfer her so she could work under a

33

different supervisor. (*Id.* at PageID.8–9, ¶¶ 34, 41.) Defendant, however, refused to transfer Robinson or to take any action with respect to her complaint of sexual harassment. (*Id.* at PageID.9, ¶ 42.) These allegations plausibly support the conclusion that, rather than taking steps to remedy the situation, Defendant instead ensured that Robinson would continue to be forced to work under a supervisor who was sexually harassing and attempting to intimidate her. These allegations suffice to allege that Robinson was constructively discharged at this stage of the case. *See Sobers v. Ascension Providence Hosp.*, No. 2:23-cv-12126, 2024 WL 1776335, at *1, *5 (E.D. Mich. Apr. 23, 2024) (concluding that a plaintiff stated a plausible claim that she was constructively discharged by alleging that her supervisors verbally abused her, falsely accused her of failing to meet the dress code, told her that she needed to wear sheer shirts, forced her to change seats frequently when pregnant, and threatened to terminate her when she had to leave work due to a medical emergency relating to her pregnancy).

### iv. General Pleading Requirements

Finally, Defendant FCA is incorrect in arguing that the EEOC's Complaint fails to provide adequate notice of its claims as a general

matter. (*See* ECF No. 11, PageID.85–89.) The decision on which it relies—*Lee v. Ohio Educ. Ass'n*, 95 F.3d 386, 392–93 (6th Cir. 2020) (cited by ECF No. 11, PageID.86, PageID.87)—does not help Defendant. The Sixth Circuit criticized the *Lee* complaint for including "all seven of [the plaintiff's] state-law causes of action . . . within a single sentence." *See* 95 F.3d at 392 (noting allegation that the plaintiff "is also suing . . . under the state-law torts of conversion, trespass to chattels, trover, replevin, detinue, unjust enrichment, restitution, and any other state-law cause of action that offers the relief"). It explained that the plaintiff's failure to "connect specific facts or events with the various causes of action [the plaintiff] asserted" meant that the defendants were not provided with "adequate notice of the claims against them and the grounds on which each claim rests." *Id.* at 392–93 (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). It also concluded that the pleading's "shotgun" nature violated Rule 10(b) in that it "failed to separate each of [the plaintiff's] causes of action or claims for relief into separate counts." *Id.* (citations omitted).

The EEOC's complaint does not suffer from the flaws identified in *Lee*. The complaint makes clear that the EEOC is asserting two distinct

35

claims: (1) that Defendant created a hostile work environment in violation of Title VII that affected Jasmine Harvey, Jasmine Robinson, and other similarly situated women (*see* ECF No. 1, PageID.4–9), and (2) that Defendant constructively discharged Jasmine Robinson (*see id.* at PageID.9–10). Each of these claims is supported by factual allegations. The Complaint also includes a prayer for relief that summarizes the relief that the EEOC is seeking. (*See id.* at PageID.10–11.) The Federal Rules of Civil Procedure do not require more. *See* Fed. R. Civ. P. 8(a) (requiring a pleading to include a "short and plain statement of the claim showing that the pleader is entitled to relief" and a "demand for the relief sought, which may include . . . different types of relief"); Fed. R. Civ. P. 10(b) (requiring a party to state its claim or defenses "in numbered paragraphs" and to state "each claim founded on a separate transaction or occurrence . . . in a separate count" if "doing so would promote clarity").

In short, the Court disagrees with Defendant's assertion that the complaint fails to provide adequate notice of the EEOC's claims.

### III. Motion to Intervene

As set forth above, putative Intervening Plaintiffs Cherae White, Jennifer Springfield, and Lakaela Harvey seek leave to intervene as

36

individual parties in this matter, to assert claims of sexual harassment, hostile work environment, and/or sex discrimination under Title VII and ELCRA against Defendant FCA US, LLC, and to join two additional individual defendants (Robert Brown and JoeDon Williams) as parties and assert claims against them under ELCRA.

For the reasons set forth below, the Sixth Circuit's single-filing rule permits the Intervening Plaintiffs to seek judicial relief despite not filing their own charges with the EEOC. The Court will permit the putative Intervening Plaintiffs to intervene under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure on grounds that they filed a timely motion and seek to assert claims that share common questions of law and, potentially, common questions of fact with the EEOC's Complaint.

### A.    Single-Filing Rule

Before addressing the potential grounds to permit intervention, the Court must first address whether the three putative Intervening Plaintiffs are entitled to seek judicial relief under Title VII. Under most circumstances, "[t]imely filing of an EEOC complaint is a prerequisite to a Title VII suit." *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 839 (6th Cir. 1994) (citations omitted). Here, however, none of the three

Intervening Plaintiffs filed her own charge of sex discrimination with the EEOC. The Court must therefore determine whether the Intervening Plaintiffs qualify for an exception that would permit them to seek judicial relief without first exhausting their administrative remedies.

The Intervening Plaintiffs contend that, under the Sixth Circuit's single-filing rule, they are entitled to "piggyback" on the charges that Jasmine Robinson and Jasmine Harvey timely filed with the EEOC. (*See* ECF No. 19, PageID.248–251.) Under the single-filing rule, a Title VII claimant may be excused from the requirement to file her own charge with the EEOC if (1) she possesses a "substantially related non-filed claim" that (2) "arises out of the same time frame as a timely filed claim." *Wilson Metal Casket*, 24 F.3d at 840. "The rationale behind the 'single filing rule' is the belief that it would be wasteful for numerous employees with the same grievances to file identical complaints with the EEOC." *Id.* (citing *Wheeler v. Am. Home Prods. Co.*, 582 F.2d 891, 897 (5th Cir. 1977)). As a general matter, "a charge will be adequate to support piggybacking . . . if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt

38

informal conciliation of the claims before a lawsuit if filed." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995).

While it is a close call, the Court concludes that the Intervening Plaintiffs may piggyback off the charge that Jasmine Robinson filed with the EEOC.[12]

First, the claims asserted by the Intervening Plaintiffs are "substantially related" to Jasmine Robinson's timely filed charge. The "size of the work unit" dictates the "appropriate test" for determining whether claims are "substantially related." *Peeples v. City of Detroit*, 891 F.3d 622, 632 (6th Cir. 2018) (citing *Howlett*, 49 F.3d at 195). "[S]imilarity of grievances suffices" if the work unit is "modestly sized." *Id.* (citing *Howlett*, 49 F.3d at 195, 197–98). If the work unit is "larger," however, "'there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim.'" *Id.* (quoting *Howlett*, 49 F.3d at 195)).

As set forth above, Ms. Robinson was employed on the production line at Defendant's Mack Plant between March 2021 and June 2021.

---

[12] Because Ms. Robinson's charge provides a sufficient basis to support piggybacking, the Court need not decide whether piggybacking would be permitted based on Jasmine Harvey's charge.

(ECF No. 1, PageID.7, ¶ 26, PageID.9, ¶ 43.) In the charge she filed with the EEOC in August 2021, Ms. Robinson alleged that "[d]uring my time of employment [at the Mack Plant], myself and other women were subjected to sexual harassment by members of management as well as other male employees." (ECF No. 18-4, PageID.239.) Ms. Robinson did not specify whether the "other women" worked in the same unit. The EEOC's May 2024 Letter of Determination regarding Ms. Robinson's charge advised Defendant that "like and related evidence growing out of this investigation indicates that there is reasonable cause to believe that other, similarly situated women were harmed due to [Defendant's] failure to prevent and remedy sex harassment." (ECF No. 11-3, PageID.107.)

Like Ms. Robinson, the Intervening Plaintiffs were employed at Defendant's Mack Plant in Detroit, Michigan. (ECF No. 14, PageID.121, ¶ 1.) Like Ms. Robinson, they claim to have been sexually harassed by male supervisors and/or co-workers while working at the Mack Plant. (*See, e.g., id.* at PageID.121–123.) And like Ms. Robinson, they claim that Defendant failed to adequately investigate and address complaints raised by women who faced sexual harassment while working at the

40

Mack Plant. (*See, e.g., id.*) Further, Ms. Robinson's charge specifically put Defendant on notice of the potential for other female employees at the Mack Plant to assert that they were being sexually harassed. (*See* ECF No. 18-4, PageID.239.)

These similarities suffice to demonstrate that the claims are "substantially related" for purposes of the single-filing rule. Although the size of the relevant business unit is not clear from the current record, the allegations here satisfy the tests identified by the Sixth Circuit for both "modestly sized" and "larger" business units, because the grievances are "similar[]" and because Ms. Robinson's charge provided "'some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim.'" *See Peeples*, 891 F.3d at 632 (quoting *Howlett*, 49 F.3d at 195).

The claims asserted by the Intervening Plaintiffs may also be deemed to arise from the same time period as the claims asserted by Ms. Robinson. This is true even though the Intervening Plaintiffs all worked at the Mack Plant after Ms. Robinson's employment was terminated.[13]

---

[13] As set forth above, Ms. Robinson worked at the Mack Plant between March 2021 and early June 2021. (ECF No. 1, PageID.7, ¶ 26, PageID.9, ¶ 43.) LaKaela Harvey claims to have "joined Stellantis" in "August 2021" (ECF No. 14, PageID.137,

The Sixth Circuit has deemed individual claims of sexual harassment to arise during the same time period where (1) the EEOC determined that the defendant engaged in a "common practice of sexual harassment of female employees" and (2) this practice "continued" after the end of the employment of the individual who filed a timely charge with the EEOC and through the employment of the non-filing individual. *See Wilson Metal Casket*, 24 F.3d at 839–40. The Sixth Circuit concluded, for instance, that sexual-harassment claims asserted by two women arose during the "same period" for purposes of the single-filing rule, despite one woman being terminated in 1984, three years before the other woman joined the defendant company in 1987, based on the EEOC's finding that the owner of the business "engaged in a common practice of sexual harassment of female employees" (*id.*) and the court's own finding that "the practice of sexual harassment in this case continued over a three year period." *Id.* at 840.

Here, the EEOC appears to have concluded that Defendant engaged in a common practice of "tolerating sex discrimination against Harvey,

¶ 83), Cherae White began working at the Mack Plant in "late 2022" (*id.* at PageID.125, ¶ 14), and Jennifer Springfield was transferred to the Mack Plant in "early 2023" (*id.* at PageID.133, ¶ 53).

42

Robinson, and other female employees at the Mack Plant by subjecting them to severe or pervasive sexual harassment." (ECF No. 1, PageID.4, ¶ 14(a); *see also* ECF No. 11-3, PageID.107 (portion of a May 17, 2024 Letter of Determination in which the EEOC concluded that "like and related evidence growing out of [the] investigation [of Jasmine Robinson's EEOC charge] indicates that there is reasonable cause to believe that other, similarly situated women were harmed due to Respondent's failure to prevent and remedy sex harassment").) The EEOC's allegations also appear to indicate that this practice continued after Robinson's termination in June 2021, as the Complaint alleges that Defendant "has engaged in unlawful employment practices" "[s]ince at least December of 2020." (ECF No. 1, PageID.4, ¶ 14.) These facts suffice under *Wilson Metal Casket* to permit the putative Intervening Plaintiffs to pursue judicial relief under the single-filing rule.

### B.    Permissive Intervention Under Rule 24(b)

The Court permits Intervening Plaintiffs to intervene under Rule 24(b)(1)(B) on grounds that they made a timely motion and are asserting claims that "share[] with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The EEOC's Complaint and the

Proposed Intervening Complaint both allege that Defendant FCA US, LLC permitted its female employees to be sexually harassed by their male supervisors and co-workers and fostered a hostile work environment for these employees in violation of Title VII. Any factual differences regarding the specific individuals or time periods involved do not erase these common questions of law and fact.

In addition, the Court will allow the joinder of individual defendants Robert Brown and JoeDon Williams and will exercise supplemental jurisdiction over the state-law (ELCRA) claims asserted by the Intervening Plaintiffs. *See* Fed. R. Civ. P. 20; 28 U.S.C. § 1367(a).[14]

Because the putative Intervening Plaintiffs will be permitted to intervene under Rule 24(b) as set forth above, the Court need not address their argument that 42 U.S.C. § 2000e-5(f)(1) affords them an unconditional statutory right to intervene in this matter and thus makes their intervention mandatory under Fed. R. Civ. P. 24(a)(1).

---

[14] The Court takes no position on whether such claims are legally viable, as neither Brown nor Williams has yet had an opportunity to respond to the allegations.

44

## IV.   Conclusion

For the reasons set forth above, Defendant's motion to dismiss and/or for a more definite statement (ECF No. 11) is DENIED, and the motion to intervene filed by putative Intervening Plaintiffs Cherae White, Jennifer Springfield, and LaKaela Harvey (ECF No. 14) is GRANTED.

The Intervening Plaintiffs are directed to file their Proposed Intervening Complaint on the docket.

IT IS SO ORDERED.

Dated: May 13, 2026              s/ Judith E. Levy
    Ann Arbor, Michigan        JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 13, 2026.

                                 s/William Barkholz
                                 WILLIAM BARKHOLZ
                                 Case Manager